IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPHINE KENNA, as an individual and in her capacity as Administratrix of Gerard Kenna, deceased, ) ) ) ) | |
| Plaintiff, ) | CIVIL ACTION NO. 03-211J |
| ) | |
| v. ) | |
| ) | JUDGE GIBSON |
| JILL-DHARA, INC., a corporation, t/d/b/a BEST WESTERN PLAZA MOTOR LODGE and JAY RAM II, INC., a Limited Liability Company, ) ) ) ) ) | |
| Defendants. ) | |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the Defendants' Motion in Limine (Document No. 14) and accompanying Memorandum in Support (Document No. 27)(hereinafter "Memorandum"). The parties presented oral argument before the Court on May 4, 2006 and the deposition transcript of the challenged expert was offered by the parties in lieu of any examination of the challenged expert in open court. *See* Defendant's Memorandum, Exhibit Transcript (hereinafter "T").

### STATEMENT OF JURISDICTION AND VENUE/SYNOPSIS

The Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1332 and venue is proper pursuant to 28 U.S.C. § 1391.

This matter arises from a personal injury sustained by the decedent while he was an invitee on the real property of the Defendants. The decedent sustained a tri-malleolar fracture of the right ankle. Defendant's Memorandum, Exhibit A, Dr. Vena's Letter. Three days after completion of surgery for

fixation of the fracture, the decedent began patient rehabilitation and two days thereafter expired after "a rather acute episode of shortness of breath" and respiratory distress" and attempts to resuscitate the decedent failed. *Id.* Doctor Vincent B. Vena, M.D., the decedent's surgeon and treating physician with respect to this injury and the Plaintiff's expert as to the cause of the decedent's death, opined that "[a] pulmonary embolus was the-most likely cause of his death." *Id.* No autopsy was performed. *Id.*

For the reasons stated herein, said Defendants' Motion in Limine is denied.

## ANALYSIS

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702 thus has three requirements: 1) that the proffered expert possess the necessary qualifications to form the opinion made; 2) that the opinion is reliable, *i.e.*, based on good grounds; and 3) that the proffered opinion "fits", *i.e.* assists the trier of fact. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d, 717, 741-743 (3d Cir. 1994).

The Defendants seek the exclusion of Dr. Vena's opinion as to the cause of death based upon three arguments: Dr. Vena's lack of qualifications to opine as to the cause of death, the lack of reliability in Dr. Vena's opinion, and failure of Dr. Vena's opinion to assist the trier of fact.

Dr. Vena is a medical doctor licensed in Pennsylvania and a board certified orthopedic surgeon. He holds a master of science degree in physiology, has previously worked as an autopsy assistant and currently practices orthopedic surgery with Western Pennsylvania Orthopedics and Sports Medicine in Johnstown Pennsylvania. T, pp. 4-8. Dr. Vena is aware that pulmonary emboli are a complication

of orthopedic surgery and knows their signs and symptoms. T, p. 9. Dr. Vena is not a pathologist and does not as a part of his practice routinely determine the cause of death of his patients. T, p. 10.

The Defendants argue that Dr. Vena is not a pathologist and does not regularly, as part of the practice of his medicine, diagnose the cause of death of his patients. Memorandum, p. 4; Exhibit A, p. 10. Further, it is argued that while he has experience with pulmonary emboli in his surgery practice, Dr. Vena lacks the qualifications to opine that a pulmonary embolus caused the decedent's death. Memorandum, p. 4.

The law is well settled in this Circuit that a proposed expert cannot be excluded based upon the conclusion that "the trial court does not deem the proposed expert to be the most qualified or because the proposed expert does not have the specialization that the Court considers most appropriate." *Holbrook v. Lykes Bros., S.S., Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) *citing In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 855, 856 (3d Cir. 1990). The skill or specialized knowledge that is the subject of Rule 702 need only be "greater than the average layman" *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citation omitted). The Court of Appeals for the Third Circuit has professed the use of a "liberal standard of qualifying experts." *Id.* at 742, but this liberal standard does not permit the "qualifying [of] *any* proffered witness as an expert." *Waldorf v. Shuta, et al*, 142 F.3d 601, 625 (3d Cir. 1998).

Dr. Vena has experience with pulmonary emboli through his practice of orthopedic surgery and medicine. Clearly, Dr. Vena has general training as a medical doctor and as an orthopedic surgeon, but his lack of specialty in pathology is not a basis to dismiss his opinion regarding a cause of death, particularly when the alleged cause of death is a known complication common to his surgical practice. Had Dr. Vena not been trained or practicing in a specialty that permitted exposure to pulmonary

3

emboli, this Court might reconsider its conclusion. However, Dr. Vena's experience with a complication common to his practice, which is also a possible diagnosis of a cause of death that a pathologist encounters in his practice, is sufficient to qualifying him as an expert possessing knowledge and skill more than a layman in this area of medicine. Also supportive of Dr. Vena's qualifying experience is his experience as an autopsy assistant while pursuing a masters degree in physiology. The Court finds that Dr. Vena is qualified to opine as to pulmonary emboli as a cause of death because of his training as a medical doctor, experience as an autopsy assistant and most importantly his specific experiences with pulmonary emboli through orthopedic surgical practice.

The Defendants next challenge the reliability of Dr. Vena's opinion as to the cause of death. The Defendants argue that "the gold standard to determine the cause of death ...[is] an autopsy" but that one was not performed because the decedent's family "declined to have this performed." Memorandum, p. 4. Furthermore, the Defendants argue that no testing of the decedent was conducted prior to his death that would support Dr. Vena's conclusion that a pulmonary embolus was the cause of death and that without some objective supporting evidence the cause of death could be one of many conditions. Memorandum, pp. 4-5. The Plaintiff argues otherwise, indicating that Dr. Vena engaged in a differential diagnosis based upon the medical record and the decedent's presentation and that the lack of other methods of testing or evaluating to support his conclusion as to the cause of death is a matter of the weight of the evidence, not the admissibility of Dr. Vena's opinion. Plaintiff's Supplemental Brief (Document No. 28), pp. 3-7. The Court agrees.

> The reliability of differential diagnosis has been approved in this circuit. *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 154-155 (3rd Cir 1999); *Paoli III*, 35 F.3d 717, 742, n.8 (3rd Cir. 1994). The Court will therefore dispense with a step-by-step analysis of the eight steps of *Paoli* to find reliability in the methodology of differential diagnosis in general. However, the use of differential diagnosis does not create a *per se* reliable

4

conclusion. This issue was also addressed in *Heller, supra*.

In *Heller*, the Third Circuit found that an expert employing a differential diagnosis could not have his opinion automatically excluded for failure to find support for his diagnosis in medical literature, but a differential diagnosis cannot "sanitize an otherwise untrustworthy conclusion," which lacks "foundation." *Heller*, at 156. The Third Circuit emphasized that the question is not whether scientific studies have been published supporting the results of the differential diagnosis; the question is whether the overall conclusion of the expert is based on good grounds and does not have analytical gaps within its foundation. *Heller* at 155-156.

*Wicker, et al. v. Consolidated Rail Corporation*, 371 F.Supp.2d 702, 723-724 (W.D.Pa. 2005).

The Plaintiff cites the chemical exposure case of *Kannankeril v. Terminix International, Inc.*, 128 F.3d 802 (3rd Cir. 1997) to support her argument that a differential diagnosis which did not take into account certain types of evidence, *e.g.*, an autopsy, is not required to be excluded based upon a challenge to reliability. Specifically in *Kannankeril*, the Third Circuit wrote:

> We find that Terminix's assertion is without merit. First, there is no expert opinion in the record to establish that an ambient air test, particularly an ambient air test performed nine months after the final application of Dursban, is the only appropriate way in this case to gauge exposure to the organophosphate. Moreover, the plaintiffs were prepared to offer into evidence the Dursban product label which contained warnings such as: "HARMFUL IF SWALLOWED. HARMFUL IF ABSORBED THROUGH SKIN. CAUSES EYE AND SKIN IRRITATION" and "Thoroughly wash dishes and food handling utensils with soap and water if they become contaminated by application of this product. Do not allow children or pets to contact treated surfaces until spray has dried." App. at 241-43. Under the facts as presented in this case, the district judge erred in ruling that an expert may rely only on the ambient air test to determine whether Dr. Kannankeril had been exposed to Dursban. Instead, all factual evidence of the presence of the chemicals in the residence should be relevant in forming an expert opinion of causation.
>
> We conclude that it is for the trier of fact to determine what weight to give the ambient air test results as an indication of exposure. *See Joiner v. General Elec. Co.*, 78 F.3d 524, 534 (11th Cir.1996) (reversing exclusion of expert opinions that plaintiffs' exposure to certain chemicals caused his lung cancer where there were issues of fact whether plaintiff was actually exposed to the chemicals so that summary judgment based on a finding of no exposure was inappropriate). The issue whether an ambient air test should be given more weight than pesticide application records goes to the weight rather than the admissibility of evidence. *See United States v. Velasquez*, 64 F.3d 844, 848 (3d Cir.1995) (citing *United States v. Jakobetz*, 955 F.2d 786, 800 (2d Cir.1992)). The trial

5

judge must be careful not to mistake credibility questions for admissibility questions. *Kannankeril* at 808-809. The Court applies the same reasoning in the case *sub judice*. Dr. Vena indicates that an autopsy would be the "gold standard" for determining the existence of a pulmonary embolism that caused the decedent's death. T, p. 24. However, the lack of an autopsy does not prevent Dr. Vena's opinion from being reliable and being based on "good grounds." The failure to conduct other tests of the decedent prior to his death also does not preclude Dr. Vena from conducting a reliable differential diagnosis. The Defendants may certainly cross-examine Dr. Vena at trial as to the absence of these tests and evaluations and such matter would go to the weight of Dr. Vena's testimony, not its admissibility. Dr. Vena evaluated medical records, had visited the decedent everyday after his surgery until his passing and had performed the recent orthopedic surgery to which a complication of pulmonary emboli is known to exist. T, pp. 12-17, 18-21. Therefore, good grounds exist for Dr. Vena to opine that a pulmonary embolus was the cause of death without other objective testing and evaluation of the decedent.

Finally, the Defendants argue for exclusion of Dr. Vena's opinion because it would fail to assist the trier of fact, otherwise known as the "fit" requirement. *Soldo v. Sandoz Pharmaceuticals Corp.*, 244 F.Supp.2d 434, 527 (W.D.Pa. 2003). Essentially, the Defendants challenge Dr. Vena's opinion as not being based on a reasonable degree of medical certainty, a requirement of all medical expert testimony in cases tried under Pennsylvania substantive law. Memorandum, pp. 5-7. Indeed, the requirement that medical expert opinion testimony be based upon a reasonable degree of medical certainty is clear under Pennsylvania law. *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 n. 4 (3d Cir. 1999). The Court finds that Dr. Vena has made his opinions based upon a reasonable degree of medical certainty. T, pp. 20-21, 29.

As for the Defendants' more general argument that Dr. Vena's opinion does not assist the trier of fact, the Court finds that it does and that Dr. Vena's opinion "fits" the issue of the cause of death in this case. It has already been stated that pulmonary emboli are a complication of the surgery that Dr. Vena performed upon the decedent and the decedent was aware of this risk. Additionally, the presentation of the decedent as recounted in the medical records and Dr. Vena's observation of the decedent in his post-operative state have been testified to as being consistent with a pulmonary embolus. The fact that other causes of death may exist does not demand the exclusion of Dr. Vena's opinion; Dr. Vena's opinion is based upon the facts specific to this case and is consistent with such facts and his interpretation of the decedent's cause of death will assist the trier of fact in reaching a factual conclusion as to the cause of death. The medical knowledge and conclusion at issue do have a connection to the ultimate issue of whether the decedent's death was caused by a pulmonary embolus. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742-743 (3rd Cir. 1994)(explaining the requirement of fit).

An appropriate Order follows.

**AND NOW**, this 8th day of May, 2006, this matter coming before the Court on the Defendants' Motion in Limine (Document No. 14), in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendants' Motion is DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**